IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

**MORROW EQUIPMENT COMPANY, LLC**, a foreign Limited Liability Company,

Plaintiff,

v.

**STONEBRIDGE, INC.**, a foreign corporation

Defendant.

Case No. 6:19-cv-01738-MC

OPINION AND ORDER

MCSHANE, Judge:

Plaintiff Morrow Equipment Company, LLC ("Morrow") filed this action against Defendant Stonebridge, Inc. ("Stonebridge"), alleging breach of contract. Stonebridge's original Motion to Dismiss was granted, but the Court allowed Morrow to amend the complaint. *See* ECF No. 22. Morrow now argues an implied contract was formed. First Am. Compl. ¶ 10, ECF No. 23. Because the parties' single previous dealing fails to establish an implied contract, Morrow has failed to state a claim for breach of contract. Stonebridge's Motion to Dismiss (ECF No. 24) is therefore GRANTED and the case is DISMISSED with prejudice.

**STANDARDS**

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint must contain sufficient factual matter that "state[s] a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible on its face when the factual allegations allow the court to infer the defendant's liability based on the alleged conduct.

*Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). The factual allegations must present more than "the mere possibility of misconduct." *Id.* at 678.

While considering a motion to dismiss, the court must accept all allegations of material fact as true and construe those facts in the light most favorable to the non-moving party. *Burget v. Lokelani Bernice Pauahi Bishop Trust*, 200 F.3d 661, 663 (9th Cir. 2000). But the court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555. If the complaint is dismissed, leave to amend should be granted unless the court "determines that the pleading could not possibly be cured by the allegation of other facts." *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995).

**BACKGROUND**

For brevity, the Court adopts the factual findings found in its previous order. *See* Op. and Order 2–3, ECF No. 22. Important here, as part of its amended complaint, Morrow alleges previous dealings between the parties in 2016. FAC ¶ 10. Because of this previous dealing, Morrow argues that the parties had entered into a binding contract in 2018 "even before any money changed hands." FAC ¶ 11.

**DISCUSSION**

Oregon has adopted the Uniform Commercial Code for the leases of goods. Or. Rev. Stat. § 72A.1010. Oregon statutory law enumerates the requirements for a valid offer and acceptance for such leases. Or. Rev. Stat. § 72A.2060. If the method of acceptance is made clear in a lease agreement, that method must be complied with. Or. Rev. Stat. § 72A.2060(1) ("Unless otherwise *unambiguously* indicated by the language or circumstances, an offer to make a lease contract must be construed as inviting acceptance in any manner and by any medium reasonable in the circumstances." (emphasis added)).

Whether a certain contractual provision is ambiguous is a legal question for the Court to decide. *Mann v. Wetter*, 100 Or. App. 184, 188 (1990). And "[t]he 'mere fact' that the parties to a contract present competing interpretations of a particular provision of that agreement 'does not compel a conclusion of ambiguity.'" *Alexander Loop, LLC v. City of Eugene*, 297 Or. App. 775, 783 (2019) (quoting *Manley v. City of Coburg*, 282 Or. App. 834, 839 (2016)). The Court will first determine whether a disputed provision is ambiguous by analyzing the term in the context of the agreement as a whole. *Yogman v. Parrott*, 325 Or. 358, 361 (1997). In deciding that contractual terms are unambiguous at this step, courts have paid special attention to terms of art unique to a given field of law. *Apeldyn Corp. v. Eidos, LLC*, 943 F. Supp. 2d 1145, 1150–51 (D. Or. 2013) (stating that the terms "[c]laims of a patent" and "invalidation" are unique to patent law and inform the court that these terms make the clause operate in an unambiguous manner).

Here, as stated in this Court's initial opinion, the acceptance clause of the Equipment Lease Agreement ("ELA") required Stonebridge to pay a deposit before the contract became binding. *See* Op. and Order 4. The Court finds that this method of acceptance was unambiguously reflected not only by the boilerplate provision of two month's rent deposit on the face of the ELA, but also because Morrow kept such a deposit requirement when it tailored the deposit down to one month's rent. Because Morrow could limit the mode of acceptance, which included a required deposit payment, and Stonebridge never complied with the stated mode of acceptance, the parties never formed a valid contract. *See Reedsport Sch. Dist. No. 105 v. Gulf Ins. Co.*, 210 Or. App. 679, 685 (2007) (citing *Cochran v. Connell*, 53 Or. App. 933, 937 (1981)) ("An offer to form a contract may limit acceptance in any way.").

In its amended complaint, Morrow states that "Plaintiff and Defendant have had a significant prior commercial relationship and are extensively familiar with each other's contract

terms." FAC ¶ 10. Morrow, therefore, argues that preparing a purchase order and additional correspondence from an attorney representing Stonebridge reflects the parties' belief that a contract was formed.[1] Pl.'s Resp. 7; *see also* FAC Ex. 3 at 1. An implied-in-fact contract is inferred from the parties' conduct and course of dealing. *DCIPA, LLC v. Lucile Slater Packard Children's Hosp. at Sanford*, 868 F. Supp. 2d 1042, 1053 (D. Or. 2011) (citing *Staley v. Taylor*, 165 Or. App. 256, 262 (2000) ("Implied-in-fact contracts arise because accepted course of conduct would permit a reasonable juror to find that the parties understood that their acts were sufficient to manifest an agreement.")). A course of dealing "is a sequence of conduct concerning previous transactions between the parties to a particular transaction that is fairly to be regarded as establishing a common basis of understanding for interpreting the parties' expressions and other conduct." Or. Rev. Stat. § 71.3030(2). But "*a single transaction cannot constitute a course of dealing*." *Kern Oil & Ref. Co. v. Tenneco Oil Co.*, 792 F.2d 1380, 1385 (9th Cir. 1986) (quoting *Int'l Therapeutics, Inc. v. McGraw-Edison Co.*, 721 F.2d 488, 491 (5th Cir. 1983)) (emphasis added).

Morrow's argument fails because the one-time prior dealing in 2016 did not establish "a common basis of understanding for interpreting the parties' expressions and other conduct." Or. Rev. Stat. Ann. § 71.3030(2). While Morrow relies on *DCIPA*, that case shows why the parties here did not form an implied contract. *DCIPA* concerned a dispute between an Oregon Medicaid managed healthcare plan and a hospital. 868 F. Supp. 2d at 1046. In *DCIPA*, the plaintiff's authorization form stated that the plaintiff would pay the defendant "DMAP [Division of Medical Assistance Programs] rates" for transplant and other medical services. *Id.* The defendant performed these services for three months, and each service was authorized with the same

[1] While Stonebridge questions whether the letter "can be attributed to Stonebridge at all," the Court assumes that it does for this motion. Def. Stonebridge's Reply in Support 7, ECF No. 28.

authorization form, containing the same payment term. *Id.* The defendant, however, argued that there was no contract, express or implied, and that the plaintiff underpaid. *Id.* at 1053. The court found that the "defendant's conduct, including obtaining plaintiff's authorization form, filling in the parties names and other material terms, faxing it to plaintiff for signature, and then actually performing transplant services after receiving plaintiff's signature, evidence[d] the existence of an implied contract for plaintiff's 'DMAP rates'" because "the parties' communications and overt actions clearly manifested an objective intent that defendant would provide the relevant services and plaintiff would pay for them at 'DMAP rates.'" *Id.* at 1052–53. Important here, the *DCIPA* court focused on the parties' repeated performance when finding that an implied contract existed. *Id.* at 1053 ("Because the parties *expressed mutual assent through conduct*, an enforceable contract was formed." (emphasis added)).

There are no facts here reflecting expressed mutual assent through conduct. *Id.* In 2016, Morrow and Stonebridge signed an agreement for a different project. *See* FAC, Ex. 4. This agreement included a three-month minimum rental period and several handwritten provisions, reflecting the parties modified the document after its initial preparation. FAC, Ex. 4. Stonebridge canceled this 2016 contract and paid a cancellation fee. FAC Ex.'s 4, 5. In contrast, the 2018 document provides for a ten-month minimum rental period, does not include handwritten modifications, and Stonebridge withdrew from the 2018 transaction before paying the deposit and performing. *Compare* FAC, Ex. 1 at 1, *with* Ex. 4 at 1. As a result, the 2016 and the 2018 dealings differ from one another substantially enough that the 2016 dealing does not show that the parties' conduct "clearly manifested an objective intent" to be bound by the same terms in the 2018 contract. *DCIPA*, 868 F. Supp. 2d at 1053. In other words, the single dissimilar dealing in 2016 does not show the repeated performance necessary to establish a common basis of

understanding for the 2018 document. Without past dealings involving similar repeated performance, it would be unfair to expect that Stonebridge assume it was bound by the same contract. It follows that Morrow and Stonebridge were not extensively familiar with each other's contract terms, and their "single transaction [in 2016] cannot constitute a course of dealing." *Kern Oil & Ref. Co.*, 792 F.2d at 1385. An implied contract, therefore, was not formed.

Generally, leave to amend should be granted unless the Court "determines that the pleading could not possibly be cured by the allegation of other facts." *Doe*, 58 F.3d at 497. Because amendment would be futile, this action is dismissed with prejudice.

Stonebridge also asks the Court to award them "its attorney fees, costs and disbursements as the prevailing party on Morrow's contract claim." Def.'s Mot. 16 (citing Or. Rev. Stat. §§ 20.083, 20.096(1)). As noted by Stonebridge, the ELA included an attorney fee provision that Morrow sought to enforce. FAC ¶ 26; *id.* Ex. 1 at 3, Section 9. Further, Morrow did not challenge Stonebridge's request for attorney's fees. Def. Stonebridge's Reply in Support 11, ECF No. 28. Because the statutes cited by Stonebridge provide them reciprocal rights to attorney fees, Stonebridge's request for reasonable attorney fees, costs, and disbursements is GRANTED. *Sherwood Park Bus. Ctr., LLC v. Taggart*, 267 Or. App. 217, 235 (2014).

**CONCLUSION**

Based on these reasons, Stonebridge's Motion to Dismiss (ECF No. 24) is GRANTED, and the case is DISMISSED with prejudice. Stonebridge's request for reasonable attorney fees, costs, and disbursements is also GRANTED. Stonebridge is ORDERED to file a bill of costs within fourteen days of this Opinion and Order.

///

///

IT IS SO ORDERED.

DATED this 13th day of October, 2020.

_s/Michael J. McShane___________________
Michael McShane
United States District Judge